UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LORA FELLNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-01162-SNLJ |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Acting Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

The Commissioner of the Social Security Administration denied plaintiff Lora Fellner's applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. Fellner now seeks judicial review. The Commissioner opposes the motion. The issues being fully briefed, and for the reasons set forth, this Court will **REVERSE and REMAND** the Commissioner's decision for further proceedings consistent with this Order.

**I.     Procedural History**

Fellner's application was denied at the initial determination level. She then appeared before an Administrative Law Judge ("ALJ"). The ALJ found Fellner is not disabled because her symptoms were not supported by the medical evidence available. Fellner then filed a request for review of the ALJ's decision with the Appeals Council of

---

[1] After this case was filed, Saul was confirmed as the acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

1

the Social Security Administration. The Appeals Council accepted review. Thus, the decision of the Appeals Council stands as the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Fellner now seeks review by this Court pursuant to 42 U.S.C. § 405(g).

## II.     Disability Determination—Five Steps

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 404.1520(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment is not severe if it amounts only to a slight

abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 404.1545(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"— not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner

3

is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

### III. The ALJ's Decision and the Appeal Council's Decision

At Step One, the ALJ found Fellner met the insured status requirements on January 1, 2015, and remained on that status through the period of the ALJ's decision. (Tr. 15). Fellner had not engaged in substantial gainful activity since "the post-2014 period." (Tr. 15). At Step Two, the ALJ found Fellner suffers from five severe medically determinable impairments: (1) Fuchs' dystrophy; (2) rheumatoid arthritis; (3)

4

degenerative cervical disc disease; (4) myofascial pain syndrome; and (5) obesity. (Tr. 15). At Step Three, the ALJ concluded Fellner does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations. (Tr.15-16).

Next, in beginning the analysis of Step Four, the ALJ determined Fellner's RFC.[2] The ALJ found that Fellner

> has the residual functional capacity to lift, carry, push or pull twenty pounds occasionally and ten pounds frequently, occasionally balance, stoop, crouch, kneel, crawl and climb stairs or ramps, and frequently reach, but she has been unable to climb ladders, ropes or scaffolds, have exposure to extreme temperatures and humidity, have concentrated exposure to pulmonary irritants, operate a motor vehicle, have exposure to moving mechanical parts and hazardous machinery, work at a computer or read print smaller than twelve-point font. This constitutes a limited range of light work.

(Tr. 16). As part of this determination, the ALJ found Fellner's allegations about her physical and mental symptoms' intensity, persistence, and limiting effects were not consistent with the record considered as a whole. (Tr. 17). The ALJ recognized that medication and therapy had been successful in stabilizing Fellner's rheumatoid arthritis and pain-related symptoms. (Tr. 17-18). The ALJ highlighted several records showing "very minimal disc bulging" and near-normal musculoskeletal and neurological exams. (Tr. 17). And the ALJ commented on the myriad daily activities Fellner was capable of performing, including shopping for groceries, driving, preparing meals, washing clothes,

---

[2] Determining claimant's RFC is "essential to properly completing steps four and five." *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). However, the RFC is determined at step four—a point in which the burden of proof rests with claimant. *See Scott v. Berryhill*, 855 F.3d 853, 855 (8th Cir. 2017); *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

5

doing laundry, and performing light cleaning around the house—all signs that Fellner had a "good ability to stand, walk, manipulate objects, concentrate, and otherwise function." (Tr. 18). In total, the ALJ concluded the record simply did not support Fellner's allegations of disabling impairments. (Tr. 17-18).

Based on Fellner's RFC, The ALJ determined she could not perform any past relevant work. (Tr. 18).

At Step Five, the ALJ analyzed whether Fellner can successfully adjust to other work. The ALJ relied on vocational expert (VE) testimony to determine whether Fellner could successfully adjust to other work given her "residual functional capacity, age, education, and work experience." (Tr. 19). The VE testified Fellner is able to perform work as a garment bagger, restroom attendant, and garment sorter even after considering the limitations in Fellner's RFC. (Tr. 19). The ALJ then found these jobs exist in significant numbers in the national economy and concluded Fellner is not disabled. (Tr. 19).

The Appeals Council accepted review of the ALJ's decision. It adopted the ALJ's findings under Steps 1, 2, 3, and 4, but concluded "the hearing decision did not provide sufficient proof to support finding the claimant was not disabled at Step 5 of the sequential evaluation." (Tr. 5). In particular, the ALJ did not cite to or otherwise consider "the medical-vocational rules in 20 C.F.R. Part 404, Subpart P, Appendix 2." (Tr. 5). The Appeals Council went on to consider the medical-vocational rules—or "Grids" as they are colloquially referred to—and, in applying them "as a framework for decisionmaking," concluded there are "a significant number of jobs in the national economy which

6

[Fellner] could perform." (Tr. 7). In arriving at that ultimate conclusion, though, which is essentially the same as that of the ALJ, the Council, itself, relied on the testimony of the vocational expert. It appears, then, that the Council was merely addressing the technical failure of the ALJ to first refer to the Grids before calling on a vocational expert.

IV. **Standard of Review**

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

V. **Discussion**

Fellner makes two arguments why the ALJ's decision should be reversed. First, she takes issue with the ALJ's RFC limitations related to her visual acuity in which the ALJ said she is "unable to … work at a computer or read print smaller than twelve-point

7

font." (Tr. 16). Fellner argues the ALJ "failed to include [these limitations] in the hypothetical question to the vocational expert." Second, Fellner takes issue with the ALJ's decision to give less weight to the opinions of Drs. Ying Du, Michael Schoenwalder, and Stuart Adler—arguing their opinions are not, in fact, inconsistent with the record and should not have been discredited as they were.

### A. Fellner's Visual Acuity Limitations

At Step Four, the ALJ added a non-exertional restriction to Fellner's RFC related to her vision problems; specifically, the RFC states that Fellner is "unable to … work at a computer or read print smaller than twelve-point font." (Tr. 16). A non-exertional limitation, such as loss of or constraints to visual acuity, compels the ALJ to call upon a vocational expert at Step Five to determine whether that limitation further diminishes the base of jobs available in the national economy. *See Doolittle v. Apfel*, 249 F.3d 810, 811 (8th Cir. 2001) (holding claimant's loss of vision in left eye made it "incumbent on the ALJ to call a vocational expert [at Step 5] to determine whether there are jobs in the national economy which the claimant can perform, and if so, the extent to which that base may be diminished for persons with such an impairment").

During the hearing before the ALJ, Fellner's RFC was explained to the vocational expert in the following way:

> Assuming a hypothetical individual of the claimant's age, education, and work experience you just described could perform work at the light level, lift, carry, push, pull 20 pounds occasionally, 10 pounds frequently, occasionally climb ramps and stairs, never ladders, ropes, or scaffold, occasionally balance, stoop kneel, crouch crawl, frequent reaching, no exposure to extremes in temperature or humidity, no concentrated exposure to pulmonary irritants, no operating a motor vehicle, no exposure to moving

mechanical parts or hazardous machinery, ***with no use of the computer screen*** … is there other work in the national economy that this hypothetical individual can perform?

(Tr. 80 (emphasis added)). The vocational expert responded affirmatively, opining that an individual with the described RFC could work as a garment bagger, restroom attendant, or garment sorter. (Tr. 81). On that basis, the ALJ determined Fellner was not disabled.

Fellner argues "the hypothetical question was flawed, as it does not conform to the residual functional capacity in the Appeals Council's decision or the Administrative Law Judge's decision." This Court agrees.

The problem is that while the vocational expert was asked about jobs that do not require time spent on the computer, he was never similarly asked about jobs limited to reading print larger than twelve-point font—that independent limitation was not a part of the hypothetical. And that omission was, indeed, material in that the record shows Fellner suffers vision problems affecting *both* her use of computers *and* her ability to read small print. These vision problems manifest in symptoms of double vision, glaring, shadowing, and/or ghosting. (Tr. 506, 508, 513, 517, 519, 524). Fellner describes it as "looking through a full water glass." (Tr. 70). And while her doctors took a relatively conservative approach to her condition, they seem to agree that she will require corrective surgery at some point. (Tr. 290, 349. 506). Dr. Daniel Walsh, Fellner's treating ophthalmologist, specifically noted Fellner's "decreased night and computer reading vision." (Tr. 77, 234, 506). During the hearing, Fellner explained that while she can read, she tries to "make [font] very large" to compensate for her vision issues. (Tr. 78). Cumulatively, the

9

evidence appears to have swayed the ALJ who added this non-exertional restriction to Fellner's RFC for the very reasons that she is "unable to … work at a computer *or read print smaller than twelve-point font*." (Tr. 16 (emphasis added)).

The error in failing to ask the vocational expert questions related to Fellner's inability to read small print manifests in the sampling of jobs he selected for her—jobs that simply do not capture the full extent of her RFC. Indeed, one of the jobs mentioned by the vocational expert seems to necessitate frequent reading of small print. The Dictionary of Occupational Titles describes a "garment sorter" as one who sorts garments "according to lot and size numbers recorded on tags and labels attached to garments." DICTIONARY OF OCCUPATIONAL TITLES, § 222.687-014 (4th ed. 1991). It is conceivable that a garment sorter would regularly confront print smaller than twelve-point font. Moreover, all three jobs relied upon by the vocational expert do, in fact, require level 1 reading ability, which includes the ability to read at a rate of 95-120 words per minute and compare similarities and differences between words and number series. *Id.* at §§ 920.687-018, 358.677-018, 222.687-014, App. C. All in all, the vocational expert relied on jobs requiring some measure of reading, and yet he was never asked about how Fellner's inability to read small print affected her capacity to perform these jobs at a competitive level. The ALJ erred by not addressing this point.

Because the hypothetical questions posed to the vocational expert did not capture the concrete consequences of Fellner's visual impairments, this case will be remanded so that the ALJ can further develop the record. On remand, the ALJ must elicit expert testimony addressing whether Fellner's inability to read print smaller than twelve-point

font meaningfully diminishes the base of jobs available to her in the national economy. *See Doolittle*, 249 F.3d at 811.

### B. The ALJ's Decision to Discount Certain Treating Physician Opinions

The ALJ gave little weight to the medical source statements of three treating physicians—Du, Schoenwalder, and Adler—because they were inconsistent with the record, not supported by clinical tests, and contained conclusions on disability reserved for determination by the ALJ. Du and Schoenwalder opined that Fellner's impairments prevented her from lifting or carrying more than ten pounds, sitting for more than forty-five minutes, standing for more than thirty minutes, walking more than one or two blocks at a time, stooping, crouching, handling or fingering objects, and concentrating for any meaningful duration. (Tr. 475-479, 482-487). Adler, meanwhile, was apparently asked to opine on a thyroid disorder that Fellner suffers from, but went on to conclude Fellner "is limited by other conditions including arthritis and visual impairment" that prevent her from working. (Tr. 488-492). Notably, Fellner's thyroid disorder—hypothyroidism—was not one of her severe impairments found at Step 2. (Tr. 15).

This Court agrees with the ALJ that a doctor may not opine on the ultimate question of disability, which only the ALJ can decide. *Perkins v. Astrue*, 648 F.3d 892, 898 (8th Cir. 2011). Accordingly, the ALJ did not err in discounting the opinions of Adler when he concluded Fellner was disabled because of her arthritis and visual impairments. (Tr. 18, 492).

A further examination of the record is required to determine whether the remaining opinions of Du, Schoenwalder, and Adler were properly discounted in light of

11

the total record before the ALJ. A treating physician's opinions are normally entitled to special deference; however, those opinions can be discounted in view of other, better-supported evidence in the record, inconsistencies found in the physician's own treatment notes, or where the opinions are conclusory and not well supported. *See Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). A claimant's daily activities, when inconsistent with the views of a treating physician, provide further reason to discount their opinions. *Id.* at 676.

Here, there is a plethora of evidence supporting the ALJ's decision to discount the opinions of Du, Schoenwalder, and Adler. First, Fellner's daily activities are inconsistent with the pessimistic conclusions of these doctors. Fellner admits she is capable of many daily activities despite her conditions including cooking, cleaning, shopping, driving alone, doing household chores like laundry and washing dishes, taking care of her children, mowing the lawn, and watching television. (Tr. 231-238). She even mentions that she can follow written instructions, though, for reasons related to her visual impairments, "[t]his can be difficult at times." (Tr. 236). Such activities do not align with the profound restrictions indicated in the medical source statements of Du, Schoenwalder, and Adler. *See Thomas*, 881 F.3d at 676.

Second, the doctors' opinions came in a checklist-style format with barely more than cursory reference to the medical record. When opinions are made in this way, leaving the decision-maker to guess as to the nature and scope of underlying evidence supporting them, the ALJ is right to discount such opinions as conclusory. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a

12

medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."); *Papesh v. Colvin*, 786 F.3d 1126, 1134 (8th Cir. 2015) (ALJ erred in giving "great weight" to opinion that came in checklist-style format and made only "summary references" to claimant's medical records).

Third, the doctors' own treatment notes are inconsistent with their conclusions. For example, Schoenwalder says in his medical source statement that Fellner can never twist, stoop, crouch, squat, or climb ladders. (Tr. 486). Yet, just two weeks later Schoenwalder's treatment notes indicate Fellner has normal gait and station, can "undergo exercise testing," has normal spinal alignment and mobility, and normal range of motion and strength in all extremities. (Tr. 531). In one record, Schoenwalder described Fellner's health issues as being exacerbated by a "chaotic lifestyle" and "lack of exercise" and he encouraged Fellner to work on these issues for improved health. (Tr. 550). Such records are inconsistent with Schoenwalder's medical source statement and give the ALJ ample reason to discredit it. *See Perkins v. Astrue*, 648 F.3d at 898-899 (medical source statement was properly discredited where physician's own treatment notes revealed only infrequent pain and indicated claimant could climb stairs at home, despite the statement opining she could never claim stairs).

Similarly, while Du's medical source statement indicates several of the same profound limitations as Schoenwalder, a treatment note recorded on the same day that he authored his statement reflects none of the limitations indicated. (Tr 419-422, 475-479). To be sure, Du highlighted "left trapezius[,] left scapular[, and] right piriformis" tenderness, prompting the use of steroid injections, but otherwise mentions only some

13

"uncomfortable[ness]" due to arthritis. [Tr. 421]. The injections must have worked, because, just one month later in a follow-up visit with Schoenwalder, it was indicated that Fellner's arthritis was "stable on meds" and Schoenwalder even recognized Fellner's efforts to exercise more. (Tr. 533, 535). He also noted Fellner's normal muscle strength and tone, as well as her normal joints with no swelling or tenderness. (Tr. 536).

At bottom, this Court finds there is ample evidence in the record to support the ALJ's decision to discount the opinions of Du, Schoenwalder, and Adler. *See Thomas*, 881 F.3d at 675-676. Accordingly, the Court holds the ALJ did not err in doing so.

## VI. Conclusion

Because the ALJ erred in fully and accurately fashioning hypothetical questions to the vocational expert that captured the concrete consequences of Fellner's visual impairments, that issue alone will be sent back to the ALJ for further proceedings. In all other respects, the ALJ's decision is affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which plaintiff Lora Fellner seeks in her complaint is **GRANTED IN PART and DENIED IN PART**. The Court **GRANTS** remand and rehearing on the issue of the ALJ's incomplete analysis at Step 5, but **DENIES** her request to hold, without a rehearing, that she is entitled to disability benefits under Title II of the Social Security Act.

**IT IS FURTHER ORDERED** that the Commissioner's decision is **REVERSED and REMANDED** for further proceedings consistent with this Order. On remand, the ALJ shall revisit Step 5 and further develop the concrete consequences of Fellner's visual

impairments, specifically her inability to read print smaller than twelve-point font. The ALJ shall determine, through the development of expert vocational testimony, whether Fellner's inability to read print smaller than twelve-point font erodes the base of jobs available to her to such a degree as to affect the outcome of the ALJ's decision at Step 5. A separate judgment will accompany this Order.

So ordered this 30th day of August 2019.

                                                                                               _____
                                                                       STEPHEN N. LIMBAUGH, JR.
                                                                       UNITED STATES DISTRICT JUDGE